# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

DONALD ELLIS,

    Plaintiff,

v.

SEETHA VADLAMUDI, Doctor,
NAOMI SMITH-GLADNEY, R.N.,
C. BEASLEY, Registered Nurse, SONYA
GREEN, Registered Nurse, and D. MOORE,
Registered Nurse,

    Defendants.
    _____/

CASE NO. 07-CV-10773

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AS REQUIRED BY 42 U.S.C. § 1997e(a)
(Dkt. 25)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **DENIED.**

## II. REPORT

### A. Introduction and Background

Plaintiff Donald Ellis is currently incarcerated by the Michigan Department of Corrections ("MDOC") at its Carson City Correctional Facility in Carson City, Michigan. At the time of the events giving rise to the Complaint in this matter, Plaintiff was incarcerated at Mound Correctional Facility ("NRF") in Detroit, Michigan. This *pro se* prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 was referred by United States District Judge David M. Lawson to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Dkt.

8.) All Defendants join in the instant motion to dismiss. (Dkt. 25.) Plaintiff responded (Dkt. 26) and Defendant replied. (Dkt. 28.)

Plaintiff was diagnosed with sarcoidosis of the lungs, chronic prostatitis and degenerative joint disease between 1994 and 2005. Plaintiff contends that he has complained to the Defendants, since 2004, that he was experiencing pain beyond what the prescribed Tylenol or Motrin could address. (Dkt. 1 ¶ 11.) The individual defendants and specific allegations of complaints of pain that were not addressed are contained in ¶s 13-27 of Plaintiff's Complaint. (Dkt. 1.) For purposes of this motion, the details of those particular complaints are not pertinent.

Plaintiff's complaint regarding Defendants' failure to control his pain proceeded through Step III of the MDOC grievance process. However, Defendants argue that the grievance only covers the seven day period before the June 5, 2006 date and that since Plaintiff has not alleged any specific incidents or failures during that time period, Plaintiff's grievance is untimely so the case should be dismissed.

Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

**B.    Motion Standards & Governing Law**

**1.    Motions to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a case where the complaint fails to state a claim upon which relief can be granted. Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low

threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* ___U.S.___, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).[1] *Twombly* did not change the notion that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint." *Erickson v. Pardus*, ___U.S.___, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted) (emphasis added). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Thus, the documents that are central to the complaint and are attached to the instant motions may be referred to without converting the motions to summary judgment motions.

In this case, both Plaintiff and Defendants have attached MDOC grievance documentation and medical records to the complaint and motion to dismiss. They will be considered part of the pleadings under *Nieman* and *Weiner*, *supra.*

---

[1] Although one district court in the Sixth Circuit has restricted *Twombly*'s application to antitrust conspiracy cases, the majority have not. *Weisbarth v. Geauga Park Dist.,* __F.3d___, 2007 WL 2403659, No. 06-4189 (6th Cir. Aug. 24, 2007) (declining to resolve scope of *Twombly* decision because not necessary to do so).

## 2. Exhaustion of Administrative Remedies

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court recently provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but **it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion**." *Jones,* 127 S. Ct. at 922-23 (emphasis added).

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD")

4

03.02.130 (eff. Dec. 19, 2003). The policy directive was superceded on March 5, 2007. Defendants attach the superceded policy directive to their motion but in the body of their motion, they refer to the December 2003 version. (Dkt. 25 at 3; Dkt. 25, Ex. 1.) Since the date of the incident listed on Plaintiff's grievances was May 30, 2006, and the Step I grievances were dated June 5, 2006, I find the December 2003 version was in effect at the time of the grievances at issue here; thus, all references herein will be to that version.

The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(R). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(X). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

> The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places and names of all those involved in the issue being grieved are to be included.**

MDOC PD 03.02.130(T).[2]

The prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(Y). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must request a Step II appeal form within five days, and has an additional five days to submit it. MDOC PD 03.02.130(DD).

---

[2] I note that the MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the December 2003 version – clearly requires this higher level of specificity.

5

Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(HH). The Step III response concludes the administrative grievance process.

### C. Analysis & Conclusions

Defendants assert that Plaintiff has failed to exhaust his administrative remedies with regard to the claims brought in his complaint. (Dkt. 25 at 2-4.) Plaintiff did properly proceed through Step III of the MDOC grievance process and has attached proof of the same to his complaint; Defendants also attach proof of the same to their motion. (Dkt. 1, Exs.; Dkt. 25, Ex. 2.) However, Defendants contend that "Plaintiff was aware of his grievable issues as early as 2004 [when] [p]laintiff began suffering from the abdomen and lower back pain...after being diagnosed with degenerative joint disease." (*Id.* at 3.) As Defendants note, Plaintiff indicated on his Step I grievance form that he had "complained about severe abdomen and lower back pain since 2004, but I have yet to have receive treatment for the pain which is getting worse." (Dkt. 1, Ex. 1, unnumbered.) Defendants argue that since Plaintiff did not file the Step I grievance until June 5, 2006, that his "grievance would only be timely for those incidents occurring on or after May 24, 2006, or those occurring within seven business days of the June 5 grievance date." (Dkt. 25 at 3.) Defendants further contend that Plaintiff has not pointed to any specific events occurring during that time period so Plaintiff's grievance was untimely and failed to comply with MDOC policy. (Dkt. 25 at 4.) Defendants cite no authority to support their argument.

This issue does not appear to have been addressed in the Sixth Circuit. At least one Fifth Circuit decision provides some support for Defendants' contention. In *Johnson v. Johnson*, 385

6

F.3d 503, 519 (5th Cir. 2004),[3] the plaintiff complained that "prison officials failed to protect him over the course of some eighteen months, from near-constant sexual assault." The court agreed with the Defendants' argument that Plaintiff had not properly exhausted any claims that arose before the time period in which prisoners in that state had to file a grievance, i.e., fifteen days. *Id.* The court reasoned that "[w]hile it is true that the conditions that [plaintiff] suffered both before and after the grievance were of the same general character, to permit the March 2001 grievance to reach back to events that transpired up to six months earlier would effectively negate the state's fifteen-day rule and frustrate the prison system's legitimate interest in investigating complaints while they are still fresh. That a condition continues does not excuse the failure to file a grievance." *Id.*

The court went on to conclude that plaintiff "could not have been expected to file a new grievance every fifteen days, or each time he was assaulted (which, according to him, was virtually every day), for the entire period during which he remained in the general population...in such circumstances, prisoners need not continue to file grievances about the same issue." *Id.* at 521. Therefore, the court held that claims relating to assaults *after* plaintiff's grievance was filed were sufficiently exhausted. *Id.*

Other courts have agreed that claims of the same grievable issue arising *after* the grievance was filed will be considered properly exhausted and thus, may be considered by the reviewing court. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003)(state rule requiring prisoner to define the grievable issue at Step I did not "preclude a prisoner from presenting additional factual detail at Step II and Step III that clarifies an allegation made at Step I")[4]; see also *Loutzenhiser v.*

---

[3]Although *Johnson* was decided before *Jones v. Bock*, the *Jones v. Bock* holding does not appear to undermine the analysis in *Johnson*, and neither Westlaw or Shepard's has concluded to the contrary.

[4]Abrogated on other grounds by *Jones v. Bock, supra.*

7

*Traquina*, No. S.041937LKKPANP, 2005 WL 2008999 (E.D. Cal. Aug. 22, 2005)("All claims arising from the ongoing course of treatment for plaintiff's single medical problem [even with regard to doctor who treated plaintiff two days after he filed his grievance] were within the scope of plaintiff's initial grievance"), citing *Brown v. Sikes*, 212 F.3d 1205 (11th Cir. 2000), *Clement v. California Dep't. of Corrections*, 220 F. Supp. 2d 1098 (N.D. Cal. 2002), and *Torrence v. Pelkey*, 164 F. Supp. 2d 264 (D. Conn. 2001).

However, there is a paucity of case law addressing claims of the same grievable issue that arose *before* the grievance was filed. *Johnson* concerned continuing sexual assaults which are different from an ongoing medical condition such as the one presented in the instant case.

Research has revealed district court opinions which have held, unlike the court in *Johnson*, that claims relating to an ongoing medical condition arising before, as well as after, the relevant grievance was filed may be considered exhausted. *Griswold v. Morgan*, 317 F. Supp. 2d 226, 231 (W.D.N.Y. 2004)(rejecting defendants' argument that plaintiff's claims were not exhausted because "plaintiff admits that in his grievance filed August 25, 1998, plaintiff did not grieve any medical treatment before that date, and that he has therefore failed to exhaust as to his claims in this action since they all relate to treatment prior to 1998");[5] *Gomez v. Winslow*, 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001)(finding claims exhausted where failure timely diagnose was not alleged in original grievance and where failure to timely treat was not mentioned in second grievance because "[r]ather than distinct causes of action, allegations that defendants failed to notify [plaintiff] that he tested positive for hepatitis C antibodies, begin treatment for a matter of years,

---

[5]Similarly, the "continuing violation" doctrine has been applied to § 1983 actions where "otherwise untimely claims may not be time-barred if the plaintiff can show that the claims arise out of unlawful acts that form part of an ongoing policy, provided that the plaintiff can also show 'some non-time-barred acts taken in furtherance of that policy.'" *Griswold,* citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999), *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995), and *Cole v. Miraflor*, No. 99 CIV 0977, 2001 WL 138765, *6 (S.D.N.Y. Feb. 19, 2001)(applying continuing violation doctrine to deliberate indifference claim).

8

or provide him with adequate information are simply aspects of the inadequate medical treatment he notified corrections officials about in his administrative appeals...[t]he allegations are encompassed within [plaintiff's] claim of inadequate medical care and do not require filing separate internal grievances."); *Poullard v. Blanco*, No. A.05-1019-P, 2006 WL 1675218, *8 (W.D. La. June 9, 2006)("Plaintiff's grievance adequately notified prison officials that Plaintiff perceived a problem with the medical care...[t]hat satisfied the exhaustion requirement, and Plaintiff is not barred from presenting allegations or evidence with respect to aspects of that care *before or after he filed the grievance* if those facts are related to the alleged ongoing problem with obtaining proper medical treatment for the condition.")(emphasis supplied); *Garcia v. Mule Creek State Prison*, No. S03-1947MCEPANP, 2005 WL 1366515, *2 (E.D. Ca. May 31, 2005)("all claims arising from the ongoing course of treatment for the plaintiff's single medical problem were within the scope of his grievance" thus holding that claim against doctor who had misdiagnosed plaintiff's eye condition several months prior to appropriate treatment was exhausted).

As noted in *Thomas v. Woolum*, 337 F.3d 720, 726-27 (6th Cir. 2003), the pivotal question regarding exhaustion in our Circuit is whether defendants have been provided "fair notice" of the claim. I suggest that here the defendants have received fair notice. I further note that plaintiff has proceeded through all the steps of the grievance process and did not abandon his claims before completion. *Hartsfield, supra*. In addition, since the burden has been placed on defendants to prove the affirmative defense of lack of exhaustion, I suggest that any doubt should be resolved in favor of the Plaintiff. Moreover, were the court to follow the interpretation of the MDOC grievance procedure suggested by the Defendant, prisoners could effectively be precluded in ever exhausting a grievance involving alleged failures to provide medical care for ongoing or chronic medical conditions. Finally, I suggest that cases involving ongoing medical conditions are more

persuasive than *Johnson* which involved ongoing sexual assaults. Accordingly, I suggest that the holding in the Fifth Circuit opinion of *Johnson* should not be followed and instead that the above "fair notice" inquiry from the Sixth Circuit, along with the District Court holdings allowing claims regarding ongoing medical conditions to be considered exhausted should govern this inquiry. *Thomas, supra; Griswold, Gomez, Poullard, Garcia, supra.* Therefore, I suggest that Defendants have not met their burden to prove that Plaintiff has failed to exhaust his claims and that the motion to dismiss on this basis should be denied.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

          s/ *Charles E Binder*
          CHARLES E. BINDER
Dated: November 19, 2007          United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on A. Peter Govorchin, served on Donald Ellis by first class mail, and served on District Judge Lawson in the traditional manner.

Date: November 19, 2007  By   s/Patricia T. Morris
                              Law Clerk to Magistrate Judge Binder