UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD ELLIS,

    Plaintiff,

v.

    Case Number 07-10773
    Honorable David M. Lawson
    Magistrate Judge Charles E. Binder

SEETH VADLAMUDI, NAOMI SMITH-GLADNEY,
C. BEASLEY, SONYA GREEN, and D. MOORE,

    Defendants.
_____/

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING DEFENDANTS' OBJECTIONS, AND DENYING DEFENDANTS' MOTION TO DISMISS

  This matter is before the Court on the defendants' objections to a report filed by Magistrate Judge Charles E. Binder recommending that the defendants' motion to dismiss be denied. The plaintiff is a prisoner in the custody of the Michigan Department of Corrections, who has filed a complaint alleging, among other things, that the defendants were deliberately indifferent to his serious medical needs. He contends that the defendants have failed to treat the chronic pain that results from several diagnosed conditions, and he now has been rendered immobile and confined to a wheelchair. He also alleges conspiracy. The defendants contend that the plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a), and his complaint should be dismissed. The case was referred to Judge Binder to conduct all pretrial proceedings. On November 19, 2007, Judge Binder filed a report recommending that the motion to dismiss be denied. The defendants filed timely objections. The Court has reviewed the file, the report and recommendation, the defendants' objections, and has made a *de novo* review of the record in light of the parties' submissions. The Court now concludes that the plaintiff filed a timely grievance against all the

defendants alleging an ongoing conspiracy to deprive him of medical treatment that addressed his complaints of intractable pain, he pursued his grievance through all the required steps, and therefore he exhausted his administrative remedies. The Court will adopt the magistrate judge's report in most respects and deny the motion to dismiss.

I.

A.

The events about which plaintiff Donald Ellis complains occurred when he was incarcerated at Mound Correctional Facility in Detroit, Michigan. According to his complaint filed in this court on February 22, 2007, the plaintiff has been diagnosed with a variety of medical disorders over the years, including sarcoidosis of the lungs in 1994, chronic prostatitis in 1998, and degenerative joint disease in 2004.

In 2004, the plaintiff says he began to experience severe pain in his lower back and abdominal area. In that same year, he alleges that he complained about this pain to defendant Dorothy Moore, a registered nurse in the Mound Correctional Facility health care department, and to other unnamed nurses who advised him to take aspirin and lay down. In 2005 and 2006, the plaintiff complained about his pain to defendants Naomi Smith-Gladney, Christine Beasley and Sonya Greene, nurses employed by the prison, who also told him to take aspirin and lay down. The plaintiff alleges that he requested medical care for his pain "several" times, and he had to wait "several months" before he saw a physician. Compl. ¶ 26. The plaintiff finally saw defendant Seetha Vadlamudi, a prison physician, on two occasions in 2005 and 2006. Defendant Vadlamudi prescribed Tylenol during their first meeting and Motrin during the second. The plaintiff complains that Dr. Vadlamudi did not properly treat his pain.

The plaintiff contends that his medical condition now "affect[s] everything [the plaintiff does] from standing, walking, laying down, and using the rest room for bodily functions." Aff. of Donald Ellis ¶ 2. He alleges that, due to the defendants' conduct, he "is confined in a prison setting under conditions that impose[] a significant risk to his health and safety as no medical treatment has been provided for his medical need[s]," Compl. ¶ 29, and he was "subjected . . . to increased pain in his lower back and abdomen causing him to become confined to a wheel chair for mobility," Compl. ¶ 31. By February 11, 2007, the plaintiff was receiving treatment at Duane L. Waters hospital from a Doctor Rawals. Aff. of Donald Ellis ¶¶ 4-5. He states that he receives treatment from the hospital three times each week, but that the transport to the hospital now causes him "pain and suffering." *Id.* at ¶ 4.

On June 5, 2006, the plaintiff submitted a grievance to the Michigan Department of Corrections. Originally he wrote "Ongoing" as the "date of incident," but someone later wrote "5-30-06" on the form. The plaintiff complains that he "do[es] not have access to Health Care Staff as they do not respond to my medical kites requesting treatment or medical assistance." He continues:

> **DELIBERATE INDIFFERENCE TO MY SERIOUS MEDICAL NEEDS AND A RISK TO FUTURE HARM**
> This grievance is submitted against NRF Health Care Personnel employed from July 2005, to June 2006, To Wit: Nurse Gladny; Nurse Beasley, Jane Doe Nurse-1, Jane Doe Nurse-2, and Doctor Vadlamudi. This is so because I have complained about severe abdomen and lower back pain since 2004, but I have yet to receive treatment for the pain which is getting worse. . . . The delay in providing treatment subjects me to a serious risk of future harm to my person because my condition can cause severe damage to those body parts affected by the medical ailments. I hereby request that I be seen immediately by health care and a medical program be provided to estop [sic] the pain and sufferings [sic] I have underwent since 2004. <u>The pain is so intense is causes my legs and buttocks areas to go numb</u>.

Compl. Ex. A.

After receiving no response from the Step I level, the plaintiff appealed to Step II on July 6, 2006. On August 16, 2006, Karri Osterhout, Administrative Assistant for Region III Health Care Administration, found that "[e]vidence supports [the prisoner's] claim that there was a delay in treatment for [the prisoner's] abdominal and lower back pain. Due to the nature of this complaint, this case will be referred to quality improvement for review." Compl. Ex. C. The response also summarized its investigation into the factual background of the plaintiff's complaint:

> Review of the medical record relating to your abdominal and lower back pain reveals: 8/3/05 MSP exam for chronic abdominal and lower back pain (labs and x-ray ordered; Motrin prescribed); 6/6/06 MSP exam for lower back pain and numbness and tingling in right leg (re-ordered x-ray, labs ordered and Tylenol given for pain); 6/13/06 X-ray Lumbar spine (advanced degenerative disk changes at L3-4 level with arthritis noted of these vertebral bodies; mild diffuse facet joint arthritic changes seen throughout the lumbar spine); 6/24/06 Kite concern - lower back pain and numbness in hips and legs; 6/30/06 MSP Chart Review (Motrin prescribed for pain; follow up after labs and x-rays); 7/8/06 MSP exam (x-ray reviewed; MSP ordered additional x-rays and will follow up after x-ray results); 7/11/06 X-ray PA and lateral chest (normal); 7-11-06 X-ray Lumbar spine (degenerative disk L3-4).

*Ibid.* The plaintiff was unsatisfied, however, and on August 25, 2006, he submitted his grievance to Step III, the highest level of appeal. On September 11, 2006, "J. Armstrong" issued the following response:

> Note: "On-going" is an inappropriate entry for "Date of Incident."
> Grievance alleges that he was not timely seen by the MSP for his abdominal and back pains. The Step I and II responses are affirmed. No further relief can be provided. Grievance appeal denied.

Compl. Ex. D.

The plaintiff alleges five counts in his *pro se* complaint, filed on February 22, 2007. Count one alleges a violation of the Fourteenth Amendment's Due Process Clause because the defendants "provided Plaintiff with drugs without first examining him for the medication and denied him treatment, medical diagnosis, and access to a medical doctor to properly diagnose and treat him."

Compl. ¶ 34. Count two alleges a violation of the Eight Amendment on the ground that the defendants were deliberately indifferent to his health and prevented him from receiving medical care. Compl. ¶ 35. Count three alleges a violation of his right to receive medical care. Compl. ¶ 36. Count four alleges that the defendants conspired among themselves to deny the plaintiff treatment, "causing his condition to worsen, requiring a wheel chair." Compl. ¶ 37. Count five alleges a violation of state law, Mich. Comp. Laws § 4.202(e). He seeks an order requiring the defendants to provide him with medical treatment, and over $10,000 in damages.

B.

The defendants moved to dismiss on the ground that the plaintiff's grievance was untimely. They point to the grievances themselves – which are attached to the complaint – and to other evidence consisting of the plaintiff's medical records, and observe that the plaintiff is complaining of pain that dates back to 2004, yet he only filed a single grievance in 2006. The defendants reason that the prior incidents cannot form the basis of a lawsuit under the Prison Litigation Reform Act because the grievance is untimely.

The magistrate judge believed that the grievance was timely because the prisoner was making a complaint about an ongoing problem instead of a discrete incident. He found no Sixth Circuit precedent addressing the issue of an ongoing complaint, but he rejected the defendants' suggestion to follow the Fifth Circuit in *Johnson v. Johnson*, 385 F.3d 503, 519 (5th Cir. 2004), which dealt with a claim against prison officials for their failure to protect the plaintiff from repeated sexual assaults. The court decided that the plaintiff had only properly exhausted those claims brought within the time period allowed by the prison for filing a grievance, and therefore any assaults that occurred before the first grievance's permissible time frame could not support the

plaintiff's complaint. However, once the grievance was filed, the plaintiff need not refile the grievance to capture events that occurred *after* the grievance. The magistrate judge suggested that this case not be followed because an ongoing medical condition is different than ongoing sexual assaults.

Instead, the magistrate judge looked to several district court decisions that held that "that claims relating to an ongoing medical condition arising before, as well as after, the relevant grievance was filed may be considered exhausted." R&R at 8 (citing *Griswold v. Morgan*, 317 F. Supp. 2d 226, 231 (W.D.N.Y. 2004); *Gomez v. Winslow*, 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001); *Poullard v. Blanco*, No. A.05-1019-P, 2006 WL 1675218, *8 (W.D. La. June 9, 2006); *Garcia v. Mule Creek State Prison*, No. S03-1947MCEPANP, 2005 WL 1366515, *2 (E.D. Ca. May 31, 2005)). The magistrate judge cited the Sixth Circuit decision of *Thomas v. Woolum*, 337 F.3d 720, 726-27 (6th Cir. 2003), and applied its standard assessing whether the defendants received "fair notice" of the plaintiff's claims. The magistrate judge concluded that the burden is on the defendants to prove the affirmative defense of lack of exhaustion, suggesting that doubts be resolved in favor of the prisoner.

C.

The defendants' objections focus on Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), which held that a prisoner must adhere to the time limits in the prison's regulations. The requirements in Michigan's regulation establish a seven-day limit to initiate the grievance process. So the defendants insist that the claims against Moore and Gladney must fail because they had no contact with the plaintiff after 2005, according to the medical records. The claims against Beasley, Green, and Vadlamudi that arose before or are based on events prior to May 24, 2006 are similarly

precluded, although the defendants concede that claims based on the plaintiff's medical condition against any of the above five defendants because they did or did not do something with regard to his care after May 24, 2006 would be exhausted and can proceed.

II.

Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

The Prison Litigation Reform Act prohibits the filing of lawsuits alleging a violation of federal law "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In 2006, the Supreme Court interpreted this provision to bar suit unless the prisoner presented his grievance to the state administrative appeal system within the deadlines set by the state. *Woodford v. Ngo*, 548 U.S. 81 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, --- U.S. ----, 127 S. Ct. 910, 923 (2007). The failure to exhaust is an affirmative defense that must be proved by the defendant. *Id.* at 919; *Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. Mar. 21, 2007) (holding that failure to exhaust "may serve as a basis for dismissal only if raised and proven by the defendants."). If a prisoner presents both exhausted and unexhausted claims, the Court may proceed to consider the exhausted claims. *Jones*, 127 S.Ct. at 924.

One of the cases relied upon by the magistrate judge, *Thomas v. Woolum*, 337 F.3d 720, 725-26 (6th Cir. 2003), held that the PLRA's exhaustion requirement would not bar a lawsuit if administrative remedies were not available due to a lack of timeliness by the prisoner in seeking review. That holding was expressly abrogated by *Woodford*. *Woodford*, 126 S. Ct. at 2384. Now, a prisoner must abide by the time limits of the administrative regulations lest his claim be barred from judicial consideration.

The Michigan Department of Corrections has a policy directive applicable to prisoners who wish to grieve actions taken against them or complain about prison conditions:

> In an effort to resolve grievable issues as soon as possible, prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control. If the complaint is not resolved, the grievant may file a Step I grievance.

PD 03.02.130(R) (12/19/03). Step I must be filed "[w]ithin five business days after attempting to resolve a grievable issue with staff." PD 03.02.130(X). The grievance must specify "[d]ates, times, places[,] and names of all those involved." PD 03.02.130(T). If the grievance is not acted upon within the time limits, the prisoner may appeal within ten days of the expiration of the deadline. PD 03.02.130(V). If there is a response with which the prisoner is unsatisfied, he may appeal to the Step II Grievance Coordinator. PD 03.02.130(DD). Step I and Step II grievances are decided by specially designated staff members. PD 03.02.130(P). If the prisoner is still unsatisfied, he may appeal to Step III, where his grievance is sent to the Prisoner Affairs Section. PD 03.02.130(HH).

The prison regulations do not define a "grievable issue." Although some discrete events obviously fit neatly within that label, such as an assault by a prison guard or a denial of certain privileges, other circumstances may not become "grievable" until the passage of time or the

aggregation of events manifested by the conduct of several prison staff members. In the latter case, the date of the "grievable issue" may not be obvious, and the rigid application of the time limits established by the regulations becomes difficult.

In this case, the plaintiff contends that prison medical personnel were deliberately indifferent to his medical conditions that caused chronic pain. To prove that claim, the plaintiff must show a serious medical need and "that an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying medical care.'" *Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005)). For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate. The seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition – and the resulting pain suffered by the prisoner that equates to the infliction of punishment – may not become manifest until then as well. Such a condition is properly identified as "ongoing," and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it.

The defendants in this case argue that the Court should look to the Fifth Circuit decision in *Johnson v. Johnson* as the analytical framework for analyzing the "accrual" of the grievable issue in this case. *Johnson* dealt with a claim by a prisoner that officials failed to protect him from the daily sexual assaults by other inmates. The court held that the grievance filed by the prisoner did

aggregation of events manifested by the conduct of several prison staff members. In the latter case, the date of the "grievable issue" may not be obvious, and the rigid application of the time limits established by the regulations becomes difficult.

In this case, the plaintiff contends that prison medical personnel were deliberately indifferent to his medical conditions that caused chronic pain. To prove that claim, the plaintiff must show a serious medical need and "that an official who actually knew of the serious medical need possessed 'a sufficiently culpable state of mind in denying medical care.'" *Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005)). For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate. The seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition – and the resulting pain suffered by the prisoner that equates to the infliction of punishment – may not become manifest until then as well. Such a condition is properly identified as "ongoing," and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it.

The defendants in this case argue that the Court should look to the Fifth Circuit decision in *Johnson v. Johnson* as the analytical framework for analyzing the "accrual" of the grievable issue in this case. *Johnson* dealt with a claim by a prisoner that officials failed to protect him from the daily sexual assaults by other inmates. The court held that the grievance filed by the prisoner did

not serve to exhaust claims for assaults that occurred more fifteen days earlier, but it did cover complaints that he was assaulted and remained unprotected thereafter. *Johnson*, 385 F.3d at 519, 521 (noting that "Johnson could not have been expected to file a new grievance every fifteen days, or each time he was assaulted (which, according to him, was virtually every day), for the entire period during which he remained unprotected in the general population").

The Court agrees with the magistrate judge that *Johnson* does not provide guidance in the context of the denial of care for a chronic medical condition. The sexual assaults in *Johnson* surely were discrete events that should have prompted the prisoner to invoke the administrative complaint system promptly. The Court finds a better analogy in the cases dealing with the statute of limitations on claims of deliberate indifference to chronic medical needs. Other circuits have adopted the position that ongoing deliberate indifference to medical needs is a "continuing violation" that is not captured by a statute of limitation periods as long as the medical need remains untreated. The Seventh Circuit recently held in an unpublished opinion as follows:

> The district court erred in concluding that Jervis's suit against Dr. Mitcheff is partly barred by the statute of limitations. Unlike the district court, we do not read the amended complaint to include multiple, discrete claims. Rather, Jervis alleges that ever since he first met with Mitcheff in September 2003, he has not received medical treatment for his knee and back injuries. Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released. *See Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir.2001). The statute of limitations commences anew every day that treatment is withheld, *see id.* at 318, so in this case it does not matter whether Jervis sued more than two years after he saw Mitcheff for the first and only time.

*Jervis v. Mitcheff*, 258 F. App'x 3, 5-6 (7th Cir. Dec. 13, 2007). In an earlier case, the Seventh Circuit discussed at length when prisoner's inadequate medical care claims "accrue" for purposes of statutes of limitation:

> The district court, as we said, thought the date of accrual was when the plaintiff discovered he had a medical problem that required attention. This would be correct if the suit were for medical malpractice. But it is not; malpractice does not violate the Eighth Amendment; instead the suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition. This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. . . .
>
> A more difficult question is precisely how far the plaintiff can reach back in seeking to prove liability and estimate damages. He cannot reach back to the first time he noticed the bulge and began to experience pain from it, for remember that his suit is for redress of the deliberate indifference of the defendants, and that could not be thought to begin until they learned he had a condition warranting medical attention yet unreasonably refused to provide that attention. Until then, the defendants had not violated his rights, and so his claim had not accrued.

*Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (citations omitted). The Eleventh Circuit found that a prisoner's claims alleging inadequate medical treatment were not barred by the statute of limitations due to the continuing violations doctrine:

> The facts, as alleged in the complaint, however, support an inference of continued disregard of Robinson's need of medical treatment for his hernia until October 3, 2003, when Robinson's hernia surgery was performed. Because Robinson's claim regarding his hernia accrued on October 3, 2003, and Robinson filed his administrative claim on September 23, 2005, within the two year statute of limitations, his FTCA claim is timely as to the denial of adequate health care for his hernia. Likewise, continuing to expose Robinson to the source of his scabies after he was diagnosed was a continuing violation of Robinson's rights. Because it does not appear beyond a reasonable doubt that Robinson can prove no set of facts which would avoid the statute of limitations, Robinson's claim is timely as to his continued exposure to scabies. Consequently, we vacate and remand the claims of inadequate medical treatment for Robinson's hernia and for continued exposure to scabies.

*Robinson v. United States*, 2007 WL 2988759, *2 (11th Cir. Oct. 15, 2007).

The Court finds that the plaintiff has properly exhausted his claim alleging a continuous – or "ongoing" – Eighth Amendment violation. The defendants point out that medical records show that the plaintiff was seen by certain prison nurses well before the time allowed for filing grievances

and the claims against these nurses should be barred. However, the plaintiff has alleged that the defendants conspired over time to deprive him of medical care, thereby inflicting punishment in violation of the Eighth Amendment on an ongoing basis. Viewed in that context, the plaintiff's grievance must be considered timely, and the claims are exhausted.

Finally, it is apparent that the prison official who reviewed the Step II grievance addressed the substance of the complaint and found merit in the plaintiff's complaint of delayed or improper medical treatment. The courts that have considered the issue have held that a prisoner who files a late complaint that is nevertheless addressed by the prison system has properly exhausted his remedies. *Patel v. Fleming*, 415 F.3d 1105, 1111 (10th Cir. 2005); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Griswold v. Morgan*, 317 F. Supp. 2d 226, 229-30 (W.D.N.Y. 2004). This result is suggested by the Supreme Court's holding in *Woodford*, where the Court repeatedly noted that many prisons retain the discretion to hear late appeals. The Court also compared the rule it was announcing to that of procedural default in habeas cases. *Woodford*, 126 S. Ct. at 2386-87. In habeas cases, procedural default may be excused if the state courts decide the case on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989). The Sixth Circuit has endorsed that concept. *Haliym v. Mitchell*, 492 F.3d 680, 691 (6th Cir. 2007) ("If the state court considered Petitioner's alleged error on the merits notwithstanding the fact that it was not timely filed, then the state court's determination does not rest on a procedural ground that bars federal review.").

III.

The Court agrees with the magistrate judge's conclusion that the claims in the complaint are not barred by the PLRA's exhaustion rule.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #30] is **ADOPTED**.

It is further **ORDERED** that the defendants' objections to the recommendation [dkt #31] are **OVERRULED**.

It is further **ORDERED** that the defendants' motion to dismiss [dkt #25] is **DENIED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Charles E. Binder under the previous reference order [dkt #8] to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 636(c)(1).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 10, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 10, 2008.

s/Felicia M. Moses
FELICIA M. MOSES